STARK v. FORD MOTOR CO.

[226 N.C. App. 80 (2013)]

———————

CHEYENNE SALEENA STARK, a Minor, and CODY BRANDON STARK, a Minor, by their Guardian ad Litem, NICOLE JACOBSEN, Plaintiffs
v.
FORD MOTOR COMPANY, a Delaware Corporation, Defendant

No. COA09-286-2

Filed 19 March 2013

**1. Appeal and Error—remand—remaining issues**

The only issues remaining for the Court of Appeals to address on remand from the N.C. Supreme Court in a defective automobile design case related to the trial court's award of costs.

**2. Costs—expert witness fees—witness not under subpoena**

The trial court erred in awarding fees for expert witnesses incurred while the expert witnesses were not under subpoena.

**3. Costs—taxed against guardian ad litem—no finding of bad faith**

Addressed because it was likely to be raised on remand, the taxing of costs against a guardian *ad litem* in a defective design case in the absence of a finding of bad faith was an abuse of discretion. There are significant differences between a general guardian and a guardian *ad litem*.

On remand from the Supreme Court of North Carolina, __ N.C. __, 723 S.E.2d 753, reversing and remanding the decision of the Court of Appeals, 204 N.C. App. 1, 693 S.E.2d 253. Appeal by plaintiffs from judgment entered 15 May 2007 and orders entered 28 April 2008 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 November 2012.

*Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson and K. Edward Greene, for plaintiffs-appellants.*

**STARK v. FORD MOTOR CO.**

[226 N.C. App. 80 (2013)]

*Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes and Richard D. Dietz, and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan L.L.P., by Kirk G. Warner, for defendant-appellee.*

HUNTER, Robert C., Judge.

This case is before us on remand from the Supreme Court of North Carolina, *Stark v. Ford Motor Co.*, __ N.C. __, 723 S.E.2d 753 (2012) (hereinafter *"Stark II"*), reversing and remanding our decision in *Stark v. Ford Motor Co.*, 204 N.C. App. 1, 693 S.E.2d 253 (2010) (hereinafter *"Stark I"*). After careful review, we affirm in part and reverse in part the orders of the trial court.

## Background

The facts and procedural history of this case is provided in *Stark II* and only the essential details are recited here. In 2004, Cheyenne Saleena Stark ("Cheyenne") and Cody Brandon Stark ("Cody") (collectively "plaintiffs"), through their guardian ad litem filed a complaint against Ford Motor Company ("Ford") seeking recovery for injuries plaintiffs sustained in an automobile collision involving a 1998 Ford Taurus in which plaintiffs were passengers. Plaintiffs alleged the collision was the result of a design defect in the automobile's engine which resulted in the vehicle's unintended acceleration and that they sustained injuries from the automobile's defectively designed seatbelts.

Plaintiffs' claims came on for trial in April 2007. Ford asserted the affirmative defense provided in N.C. Gen. Stat. § 99B-3 that the seatbelt that caused Cheyenne's injuries was altered or modified by a party other than the manufacturer or seller such that Ford was relieved of liability for her injuries. At the close of evidence, Cheyenne moved for a directed verdict. The motion was denied and Ford's affirmative defense was submitted to the jury. The jury returned a verdict finding that Ford acted unreasonably in designing the Taurus but that Cheyenne's enhanced injuries were caused by an alteration or modification to the vehicle. Accordingly, the trial court entered judgment in favor of Ford, dismissed plaintiffs' complaint, and taxed plaintiffs with Ford's costs. Cheyenne then filed motions for a judgment notwithstanding the verdict ("JNOV") and a new trial, and the trial court denied both motions.

In a separate order, the trial court granted Ford's motion for costs, holding Cheyenne, Cody, and their guardian ad litem, Nicole Jacobsen ("Jacobsen"), jointly and severally liable in the amount of $45,717.92 for

Ford's costs for expert witnesses, mediation, and depositions. Plaintiffs and Jacobsen appealed. Cheyenne and Cody also appealed from the trial court's 15 May 2007 judgment dismissing plaintiffs' complaint, and Cheyenne, individually, appealed from the trial court's order denying her motions for a JNOV and a new trial.

On appeal, this Court reversed the trial court's order denying plaintiffs' motion for a directed verdict because, we concluded, in part, that Ford could not establish the affirmative defense under N.C. Gen. Stat. § 99B-3. *Stark I*, 204 N.C. App. at 12, 693 S.E.2d at 260. Central to our holding in *Stark I* was our interpretation of section 99B-3 as requiring that "the entity responsible for the modification or alteration of the product must be a party to the action in order for the defense to apply." *Id.* Because Cheyenne was five years old at the time of the accident, we concluded, she was legally incapable of modifying the seatbelt. *Id.* at 9, 693 S.E.2d at 258. Furthermore, because Cheyenne's parents were not parties to the lawsuit we concluded Ford was unable to assert a defense under section 99B-3. *Id.* at 12, 693 S.E.2d at 260.

On discretionary review, the Supreme Court of North Carolina reversed our decision concluding that the defense provided in N.C. Gen. Stat. § 99B-3 is not limited to those situations in which the entity alleged to have modified the product at issue was a party to the litigation: "The plain language of section 99B-3 says that this defense may be used when anyone other than the manufacturer or seller modifies the product, so long as the remaining requirements of that section are met." *Stark II*, __ N.C. at __, 723 S.E.2d at 761. Additionally, the Supreme Court concluded the evidence at trial was sufficient to support the trial court's denial of Cheyenne's motion for a directed verdict and the jury's verdict. *Id.* The Supreme Court remanded the matter to this Court for additional proceedings consistent with its opinion. *Id.* at __, 723 S.E.2d at 762. We allowed the parties to submit supplemental briefs and make oral arguments for our consideration of the issues on remand.

## Discussion

### A. Trial Court's Judgment and Denial of Motions for JNOV and New Trial

[1] Plaintiffs argue that our Supreme Court's holding in *Stark II* was a narrow ruling and was limited to the single issue of whether Ford's affirmative defense under N.C. Gen. Stat. § 99B-3 was properly submitted to the jury. Therefore, on remand, plaintiffs contend that the issues remaining to be decided by this Court are whether the trial court erred: (1)

in entering judgment for Ford based on the affirmative defense provided in section 99B-3; (2) in denying Cheyenne's motion for a JNOV; (3) in denying her motion for a new trial; (4) in taxing costs against plaintiffs' guardian ad litem; and (5) awarding certain expert witness fees. We do not agree with plaintiffs' reading of *Stark II,* and we conclude that the only issues remaining for this Court to address are related to the trial court's award of costs.

Despite plaintiffs' contention that *Stark II* only addressed whether Ford's affirmative defense was properly submitted to the jury, the Supreme Court addressed the sufficiency of the evidence "to resolve the directed verdict inquiry," and concluded:

> The trial court's decision on plaintiffs' *motion for directed verdict,* as well as the *jury's verdict and the trial court's judgment applying section 99B–3 to relieve Ford of liability* for the injury proximately caused by the design of its product, *can therefore be sustained on the basis of this evidence,* and we need not consider evidence of other potential modifications or modifiers.

*Id.* at __, 723 S.E.2d at 761 (emphasis added). That the Supreme Court decided these issues, in addition to its interpretation of the meaning of "party" as used in section 99B-3, is evidenced by the dissenting opinion:

> Our proper role, in my opinion, is to ask the Court of Appeals to review the sufficiency of the evidence whether Gordon Stark modified the Taurus before we undertake that matter. *Nonetheless, because the majority decided to engage in that analysis*—incorrectly, in my view, *holding the evidence sufficient*—I include the following discussion of why I conclude the opposite.

*Id.* at __, 723 S.E.2d at 763 (Hudson, J., concurring in part and dissenting in part) (emphasis added). We are " 'not at liberty to revisit' issues previously decided by our Supreme Court." *Couch v. Private Diagnostic Clinic,* 146 N.C. App. 658, 667, 554 S.E.2d 356, 363 (2001) (quoting *State v. Stephenson,* 144 N.C. App. 465, 478, 551 S.E.2d 858, 867 (2001)), *appeal dismissed and disc. review denied,* 355 N.C. 348, 563 S.E.2d 562 (2002); *see Goldston v. State,* 199 N.C. App. 618, 624, 683 S.E.2d 237, 242 (2009) ("[T]he law of the case applies . . . to issues that were decided in the former proceeding, whether explicitly or by necessary implication[.]"), *aff'd,* 364 N.C. 416, 700 S.E.2d 223 (2010). Thus, whether the trial court's denial of the motion for a JNOV is properly before us, our

Supreme Court's holding that the trial court properly denied the motion for directed verdict necessarily implies that the motion for a JNOV was also properly denied, and it precludes our inquiry into the matter. *See Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002) ("The test for determining whether a motion for directed verdict is supported by the evidence is identical to that applied when ruling on a motion for judgment notwithstanding the verdict.").

Plaintiffs also argue that the jury's verdict is irreconcilably inconsistent regarding the location of Cheyenne's seatbelt at the time of the accident, and, consequently, the trial court's denial of Cheyenne's motion for a new trial should be reversed. Our deliberation of plaintiffs' verdict inconsistency argument, however, would require us to impermissibly ignore our Supreme Court's conclusion that the jury's verdict and the trial court's judgment could be upheld by the evidence. *Stark II*, __ N.C. at __, 723 S.E.2d at 761. Accordingly, we must affirm the 15 May 2007 judgment dismissing plaintiffs' complaint and the 28 April 2008 order denying Cheyenne's motion for a JNOV and a new trial.

## B. Award of Costs

The only matter remaining before this Court is the appeal from the trial court's 28 April 2008 order taxing plaintiffs and their guardian ad litem with Ford's costs for expert witnesses, mediation, and depositions. We review the trial court's award of costs to a prevailing party for abuse of discretion. *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 646, 643 S.E.2d 28, 34 (2007), *disc. review denied*, 361 N.C. 694, 652 S.E.2d 647 (2007). It is an abuse of discretion for a trial court to base its decision on an error of law. *United States v. Ebersole*, 411 F.3d 517, 526 (4th Cir. 2005), *cert. denied*, 546 U.S. 1139, 163 L. Ed. 2d 1003 (2006).

### 1. Expert Witness Fees

[2] First, plaintiffs contend that the trial court erred in awarding fees for expert witnesses incurred while the expert witnesses were not under subpoena. Ford concedes this was error in light of *Jarrell v. Charlotte-Mecklenburg Hosp. Auth.*, 206 N.C. App. 559, 563, 698 S.E.2d 190, 193 (2010) (concluding that N.C. Gen. Stat. § 7A–314 "limits the trial court's broader discretionary power under § 7A–305(d)(11) to award expert fees as costs only when the expert is under subpoena"). Accordingly, the trial court's order awarding costs must be reversed to the extent it awarded costs for expert witnesses when the witnesses were not under subpoena. We remand for the trial court's determination of an award consistent with this decision.

## 2. Liability of Guardian ad Litem

**[3]** Although we reverse the trial court's order taxing plaintiffs with Ford's costs, we address the liability of the guardian ad litem for the costs awarded as the issue is likely to be raised before the trial court on remand. Plaintiffs and Jacobsen argue that it was error for the trial court to tax costs against plaintiffs' guardian ad litem without a finding of bad faith. We agree.

Prior to the filing of the underlying complaint, an order was entered by the Clerk of Superior Court of Mecklenburg County appointing a guardian ad litem for Cheyenne and Cody. The order noted that the minor plaintiffs were "without general or testamentary guardian" and a relative, Ruby Stark, was appointed as their guardian ad litem. On 15 March 2006, Jacobsen filed a motion seeking appointment as substitute guardian ad litem for Cheyenne and Cody, pursuant to Rule 17(b) of the North Carolina Rules of Civil Procedure. The motion was granted.

In support of their argument that Jacobsen should not be held liable for costs, plaintiffs cite N.C. Gen. Stat. § 6-31 (2011), which provides in part:

> In an action prosecuted or defended by an executor, administrator, trustee of an express trust, or a person expressly authorized by statute, costs shall be recovered as in an action by and against a person prosecuting or defending in his own right; *but such costs shall be chargeable only upon . . . the . . . party represented, unless the court directs the same to be paid by the plaintiff or defendant, personally, for mismanagement or bad faith* in such action or defense.

(Emphasis added). The trial court's order contained no finding of bad faith on the part of plaintiffs' guardian ad litem. Ford contends, however, that the trial court was authorized to tax plaintiffs' guardian ad litem pursuant to N.C. Gen. Stat. § 6-30: "When costs are adjudged against an infant plaintiff, the *guardian* by whom he appeared in the action shall be responsible therefor." (Emphasis added). Plaintiffs counter that section 6-30 is not applicable to a guardian ad litem because N.C. Gen. Stat. § 1A-1, Rule 17(b)(1) distinguishes a "guardian" and a guardian ad litem: "[W]hen any of the parties plaintiff are infants . . . they must appear by *general or testamentary guardian*, if they have any within the State *or by guardian ad litem* appointed as hereinafter provided[.]" (Emphasis added). We conclude plaintiffs' reasoning is supported by our caselaw.

**STARK v. FORD MOTOR CO.**

[226 N.C. App. 80 (2013)]

In *Smith v. Smith*, 108 N.C. 365, 369-70, 13 S.E. 113, 114 (1891), our Supreme Court concluded it was error for the trial court to tax costs against "next friends" appointed by the court to represent the real party in interest where there was no finding of bad faith in bringing the action. Applying the predecessor of N.C. Gen. Stat. § 6-31 (The Code of North Carolina § 535 (1883)), the *Smith* Court concluded that "[w]hile 'next friends' may not be embraced in the strict letter of The Code, sec. 535, they come within the purview of that section." 108 N.C. at 369, 13 S.E. at 114. As it is improper to tax costs against a trustee without a finding of mismanagement or bad faith, the *Smith* Court held, "it is error to tax 'next friends' who are not parties, without at least a similar finding." *Id.* "Indeed, the presumption, by virtue of their appointment by the court, is that they acted in good faith, and they cannot be liable to costs, unless there is an express finding against them of the facts requisite to tax them with costs." *Id.*

Recently, this Court recognized that "next friends," appointed to represent an infant plaintiff, are "the equivalent of the modern-day guardian ad litem." *Stern v. Cinoman*, __ N.C. App. __, __, 728 S.E.2d 373, 376 (citing *Lawson v. Langley*, 211 N.C. 526, 528, 191 S.E. 229, 231 (1937)), *disc. review denied*, __ N.C. __, 731 S.E.2d 145 (2012). In *Cinoman*, we cited *Roberts v. Adventure Holdings, LLC*, 208 N.C. App. 705, 708, 703 S.E.2d 784, 787 (2010), *disc. review denied*, 365 N.C. 187, 707 S.E.2d 241 (2011), in which we noted "the significant differences between a general guardian" and a guardian ad litem:

> A general guardian is responsible for the entirety of one's person and/or estate and maintains such responsibility beyond the context of the courtroom. A general guardian is one "who has general care and control of the ward's person and estate." In contrast, a [guardian ad litem] is "appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." "Ad litem" is a Latin phrase that means "[f]or the purposes of the suit[.]"

(quoting Black's Law Dictionary 774 (9th ed. 2009)) (internal citations omitted). In light of this caselaw, we conclude that the taxing of costs against the guardian ad litem in the absence of a finding of bad faith was an abuse of discretion.

## Conclusion

For the reasons stated above:

The trial court's 15 May 2007 judgment dismissing plaintiffs' complaint is AFFIRMED.

The trial court's 28 April 2008 order denying Cheyenne's motion for a judgment notwithstanding the verdict and motion for a new trial is AFFIRMED.

The trial court's 28 April 2008 order granting Ford's motion for costs is REVERSED to the extent it awarded costs for expert witnesses when the witnesses were not under subpoena and is REMANDED for the trial court to calculate an award consistent with this opinion.

Judges CALABRIA and ROBERT N. HUNTER, JR. concur.